UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
In re                                        <u>MEMORANDUM & ORDER</u>
                                             17-MC-0190(JS)
JOE'S FRIENDLY SERVICE & SON INC.,
d/b/a THATCHED COTTAGE AT THE BAY,           Chapter 7
                                             14-BK-70001(REG)

                     Debtor.
----------------------------------------X
In re

THATCHED COTTAGE LP,                         Chapter 7
                                             14-BK-70002(REG)

                     Debtor.
----------------------------------------X
BETHPAGE FEDERAL CREDIT UNION and
BUSINESS SERVICES GROUP, LLC,

                     Plaintiffs/             Adversary Proceeding
                     Respondents             16-AP-8035(REG)


          -against-

THE TOWN OF HUNTINGTON,
JOSEPH F. CLINE, INDIVIDUALLY,
RICHARD VACCHIO, INDIVIDUALLY, and
TERENCE "TERRY" MCNALLY, INDIVIDUALLY

                     Defendants/Movants.
----------------------------------------X

APPEARANCES
For Plaintiffs/
     Respondents:    Richard J. McCord, Esq.
                     Carol A. Glick, Esq.
                     Certilman Balin Adler & Hyman, LLP
                     90 Merrick Avenue
                     East Meadow, New York 11554


For Defendants/
     Movants:        Gerard DiConza, Esq.
                     Lance Aaron Schildkraut, Esq.
                     Richard Kolb Milin, Esq.
                     Archer & Greiner, P.C.
                     630 Third Avenue
                     New York, New York 10017

SEYBERT, District Judge:

Defendants Town of Huntington (the "Town"), Joseph F. Cline ("Cline"), Richard Vacchio ("Vacchio"), and Terence "Terry" McNally ("McNally") (collectively, "Defendants") move this Court to withdraw the reference to the U.S. Bankruptcy Court for the Eastern District of New York ("the Bankruptcy Court") in <u>Bethpage Federal Credit Union et al. v. Town of Huntington et al.</u>, No. 16-AP-8035, (Bankr. E.D.N.Y.) (Grossman, Bankr. J.), an adversary proceeding against Defendants in the Bankruptcy Court (the "Adversary Proceeding"). Defendants move pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Bankruptcy Rules for the Eastern District of New York. (Defs. Mot., D.E. 1.[1])

Despite removing the Adversary Proceeding to the Bankruptcy Court by representing that the Bankruptcy Court has jurisdiction over each cause of action and consenting to the entry of final orders or judgments by the Bankruptcy Court, Defendants now argue that (1) withdrawal is mandatory because the Bankruptcy Court will "review, consider and make substantial and significant findings on whether Plaintiffs' constitutional rights were deprived and whether Plaintiffs have established their claims in

---

[1] The first time the Court cites to a document, the location (docket entry) will be provided, thereafter, only the document title and page numbers/paragraph numbers will be provided.

accordance with case law" interpreting 42 U.S.C. § 1983, and (2) the Bankruptcy Court lacks subject matter jurisdiction. (See generally Defs. Br., D.E. 1-3, at ECF pp. 309-29.) Plaintiffs Bethpage Federal Credit Union ("BFCU") and Business Services Group, LLC ("BSG") (together, "Plaintiffs") oppose the Motion and argue (1) mandatory withdrawal is inappropriate because the Adversary Proceeding "involves a straight forward application of a federal statute to the particular set of facts," and (2) the Bankruptcy Court has subject matter jurisdiction because Plaintiffs' claims "arise in" a cause under Title 11, "relate to" the pending bankruptcy proceedings, and at the very least, "the Bankruptcy Court should issue findings of fact and conclusions of law." (Pls. Opp., D.E. 5, at 11-17.)

For the following reasons, Defendants' Motion is DENIED.

BACKGROUND

I.  Factual Background[2]

    A. The Bankruptcy Proceeding

        On or about January 2, 2014, Thatched Cottage LP ("Thatched LP") and Joe's Friendly Service & Son Inc. d/b/a

---

[2] This decision incorporates by reference the detailed factual and procedural background provided by Judge Grossman in his memorandum decision and order denying Defendants' motion for summary judgment. (See No. 16-AP-8035, Bankr. D.E. 111, at 3-19.) As indicated below, Judge Grossman presided over the Debtors' bankruptcy proceedings, and all related proceedings, and therefore has extensive familiarity with the facts giving rise to the instant motion.

Thatched Cottage at the Bay ("Joe's Friendly") (together, "Debtors") filed separate voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code. (In re Joe's Friendly, No. 14-BK-70001 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.) and In re Thatched Cottage LP, No. 14-BK-70002 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.) (together, the "Bankruptcy Proceedings").)[3] Ralph Colamussi ("Colamussi") was the principal of both Debtors. (Am. Compl., DiConza Decl.,[4] Ex. 6, D.E. 1-3, at ECF pp. 147-77, ¶¶ 8, 10-13.) Thatched LP, through Colamussi, owned certain property located in Centerport, New York (the "Property"). (Am. Compl. ¶¶ 7-9.) A catering facility called the "Thatched Cottage" was located on the Property and was owned and operated by Joe's Friendly, also through Colamussi, for several years. (Am. Compl. ¶¶ 7-14.)

B. The Sale of the Property

On July 3, 2014, the Bankruptcy Court appointed a trustee (the "Trustee") for Debtors who, on July 24, 2014, sought authorization for the sale of the Property at an auction. (No. 14-BK-70001, Bankr. D.E. 165 and 192.) On August 11, 2014, the Bankruptcy Court approved the terms and conditions of the sale (the "Terms and Conditions"). (No. 14-BK-70001, Bankr. D.E. 210.) On September 24, 2014, the public auction took place and the

_____

[3] The Bankruptcy Proceedings were jointly administered.

[4] The DiConza Declaration can be found at Docket Entry 1-3 at ECF pp. 41-42.

Trustee deemed Yama Raj ("Raj") as the highest bidder with BFCU as the second highest bidder.[5]  (Am. Compl. ¶¶ 22-24.)  On October 16, 2014, the Bankruptcy Court confirmed the Trustee's sale to Raj. (Am. Compl. ¶ 25.)

According to Plaintiffs, Colamussi did not want the Property sold to a third-party and leaned on his personal, business, and political connections with various Town employees, in an effort to interfere with the sale.  (Am. Compl. ¶¶ 48-53, 165.)  As part of the plan to impede the sale, Plaintiffs allege that on or around November 13, 2014, Colamussi hand-delivered engineering reports to Town employees that were modified to reflect unsafe conditions at the Thatched Cottage.  (Am. Compl. ¶¶ 52-62.) Five days later, on or around November 18, 2014, the Town determined that the Thatched Cottage was unsafe and on November 20, 2014, Vacchio, the Town's Senior Building Inspector, posted a placard on the Thatched Cottage, which states, in substantial part:

> This Building is hereby declared unsafe and unfit for human habitation [p]ursuant to the Code of the Town of Huntington.
>
> The Occupancy of this dwelling or any part thereof is unlawful.

(the "Placard", Am. Compl. ¶¶ 29, 64-67.)

---

[5] At some point prior to the Bankruptcy Proceedings, Debtors obtained a loan from BFCU which was personally guaranteed by Colamussi.  (Am. Compl. ¶¶ 15-16.)  Debtors defaulted on the loans.  (Am. Compl. ¶¶ 15-17.)

After the Town posted the Placard, Raj, the highest bidder, refused to close and defaulted on the sale. (Am. Compl. ¶¶ 70-71.) Upon Raj's default, BFCU, through its nominee BSG, was required to purchase and take title to the Property, including the Thatched Cottage, pursuant to the Terms and Conditions of the sale. (Am. Compl. ¶¶ 36-37.)

C. The Adversary Proceeding

Plaintiffs commenced the Adversary Proceeding in New York State Supreme Court, Suffolk County, on February 11, 2016.[6] (Notice of Removal, DiConza Decl., Ex. 5, D.E. 1-3, at ECF pp. 142-45.) Plaintiffs' claims arise out of (1) allegations that the Town, Cline (the Town's Director of the Department of Engineering Services), Vacchio (the Town's Senior Building Inspector), McNally (the Town's Chief Fire Marshal), Colamussi, and others, orchestrated a plan to interfere with the sale of the Property by taking steps to make the Property economically and physically

---

[6] On February 16, 2016, the Trustee commenced an adversary proceeding against the Town and Town employees, including Defendants here (the "Trustee Adversary Proceeding"). See Barnard v. Town of Huntington et al., No. 16-AP-8025 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.); Trustee Adversary Proceeding, DiConza Decl., Ex. 3, D.E. 1-3, at ECF pp. 113-35.) The Trustee Adversary Proceeding asserted violations of state law and 42 U.S.C. § 1983 based on facts similar to those alleged here regarding Defendants' alleged misconduct in connection with the determination to post the Placard. The parties negotiated a settlement that was approved on August 6, 2018. (See Settlement Order, No. 16-AP-8025, Bankr. D.E. 110.)

unattractive to Raj (or to any other third-party purchaser); (2) allegations that Defendants failed to follow proper procedures in making the decision to post the Placard; and (3) Defendants' preferential treatment towards Colamussi to Plaintiffs' detriment. (See generally Am. Compl.)

On March 11, 2016, Defendants removed the Adversary Proceeding to the Bankruptcy Court[7] stating that (1) "[m]ost of the factual allegations supporting each of the claims asserted in the [Adversary Proceeding] relate to acts, occurrences or matters that either took place during the Bankruptcy Case or were addressed by [the Bankruptcy Court]"; (2) "the Bankruptcy Court has jurisdiction over each cause of action asserted in the [Adversary Proceeding]"; and (3) the Adversary Proceeding is a "core proceeding under 28 U.S.C. § 157, including subsections (A) and (N)." (Notice of Removal, ¶¶ 2-3.) Defendants also represented that "[t]o the extent any cause of action [ ] is subsequently determined to be non-core under 28 U.S.C. § 157, the Defendants consent to the entry of final orders or judgments by the United States Bankruptcy Court." (Notice of Removal, ¶ 3.)

---

[7] The Eastern District of New York has a standing order that provides for automatic reference of bankruptcy cases to the Bankruptcy Court. Eastern District Administrative Order 264 (1986); see In re Global Aviation Holdings Inc., 496 B.R. 284, 286 (E.D.N.Y. 2013).

Plaintiffs initially opposed removal and moved to remand the Adversary Proceeding to State court. (No. 16-AP-8035, Bankr. D.E. 4.) However, on July 11, 2016, the parties entered into a So-Ordered Stipulation: (1) withdrawing Plaintiffs' motion to remand the action to State court, (2) consenting to the removal, and (3) providing Defendants an extension of time to answer the Complaint. (No. 16-AP-8035, Bankr. D.E. 12.)

On August 12, 2016, Plaintiffs filed an Amended Complaint and asserted the following causes of action: (1) tortious interference with contractual relations (Count I), (2) tortious interference with prospective economic advantage (Count II), (3) negligence (Count III), (4) deprivation of procedural and substantive due process/deprivation of property rights pursuant to 42 U.S.C. § 1983 (Count IV), (5) denial of equal protection/selective enforcement/treatment pursuant to 42 U.S.C. § 1983 (Count V), (6) conspiracy pursuant to 42 U.S.C. § 1983 (Count VI), (7) attorneys' fees pursuant to 42 U.S.C. § 1988 (Count VII, and together with Counts IV, V, and VI, the "Section 1983 Claims").[8]

On October 4, 2016, Defendants substituted counsel. (No. 16-AP-8035, Bankr. D.E. 22.) On October 19, 2016, Defendants

---

[8] The Amended Complaint removed certain Defendants, withdrew Plaintiffs' request for declaratory judgment, and added three additional claims (Count II, Count V, and Count VI). (See generally Am. Compl.)

filed a motion to dismiss the Amended Complaint primarily arguing that Plaintiffs lacked standing. (Defs. Br., DiConza Decl., Ex. 7, D.E. 1-3, at ECF pp. 179-203.) On December 5, 2016, the Bankruptcy Court heard oral argument and denied Defendants' motion in its entirety. (Dec. 5, 2016 Transcript, DiConza Decl., Ex. 9, D.E. 1-3, at ECF pp 260-81; Dec. 12, 2016 Order, No. 16-AP-8035, Bankr. D.E. 34.) On December 27, 2016, Defendants filed an answer to the Amended Complaint and asserted for the first time as an affirmative defense that "Defendants do not consent to entry of final orders or judgment by the Bankruptcy Court." (Answer to Am. Compl., DiConza Decl., Ex. 10, D.E. 1-3, at ECF pp. 283-306, ¶ 13 at ECF p. 305.) On January 11, 2017, the parties appeared before Judge Grossman for a pre-trial conference and Judge Grossman issued a pre-trial Order setting April 28, 2017 as the date to complete discovery. (Jan 13, 2019 Pre-Trial Order,, McCord Decl., Ex. I, D.E. 4-9.)

On January 23, 2017, Defendants filed this Motion.[9] While the Motion was pending, the parties continued to litigate the Adversary Proceeding and engaged in extensive discovery before the Bankruptcy Court.[10] On July 31, 2017, Defendants filed a motion

---

[9] Defendants' Motion was reassigned from Judge Arthur D. Spatt to the undersigned on April 11, 2018. (See D.E. 11.)

[10] Defendants did not seek a stay of the Adversary Proceeding pending the outcome of this Motion.

for summary judgment with the Bankrtupcy Court (No. 16-AP-8035, Bankr. D.E. 66), which Plaintiffs opposed (No. 16-AP-8035, Bankr. D.E. 78).  On January 29, 2018, the Bankruptcy Court reopened discovery to explore purported new evidence.  (No. 16-AP-8035, Bankr. D.E. 93.)  The parties submitted supplemental briefs on April 13, 2018 which rendered Defendants' summary judgment motion fully submitted.  (No. 16-AP-8035, Bankr. D.E. 100-06.)  On March 21, 2019, the Bankruptcy Court denied Defendants' motion for summary judgment.[11]  (No. 16-AP-8035, Bankr. D.E. 111.)  The parties are scheduled to try the Adversary Proceeding on December 9, 2019. (No. 16-AP-8035, Aug. 1, 2019 Pre-Trial Order, Bankr. D.E. 140.)

DISCUSSION

I.  <u>Legal Standard</u>

As relevant here, pursuant to 28 U.S.C. § 157(d), a district court "shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the

---

[11] On April 4, 2019, Defendants appealed the Order denying summary judgment to this Court on the sole basis that the individually named Defendants are entitled to an immunity defense.  (<u>Cline et al. v. Bethpage Fed. Credit Union et al</u>, No. 19-CV-2010 (E.D.N.Y.) (the "Summary Judgment Appeal," D.E.1).) On May 29, 2019, Plaintiffs filed a motion to dismiss the Summary Judgment Appeal (No. 19-CV-2010, D.E. 4).  Defendants opposed Plaintiffs' motion to dismiss (Docket No. 19-CV-2010, D.E. 22) and requested that the Court stay the Adversary Proceeding pending a determination of the Summary Judgment Appeal.  (No. 19-CV-2010, D.E. 18).  On November 25, 2019, the Court issued a decision on the Summary Judgment Appeal.

proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."[12] Courts in this Circuit construe this provision narrowly "so that it is not utilized as an escape hatch through which most bankruptcy matters [could] be removed to a district court." In re Laventhol & Horwath, 139 B.R. 109, 114-15 (S.D.N.Y. 1992) (internal quotation marks and citations omitted; alteration in original). Mandatory withdrawal is not available "merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990) (internal quotation marks and citations omitted).

A proceeding requires "substantial and material consideration" of non-bankruptcy federal laws when the court must engage in "significant interpretation, as opposed to [the] simple

---

[12] 28 U.S.C. § 157(d) provides for withdrawal in two circumstances, one of which is mandatory withdrawal. The other circumstance is "permissive withdrawal" which a District Court may allow "for any cause shown." 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.") The Court does not address permissive withdrawal because Defendants argue only that withdrawal is mandatory pursuant to 28 U.S.C. § 157(d).

application" of those laws.  <u>City of N.Y. v. Exxon Corp.</u>, 932 F.2d 1020, 1026 (2d Cir.1991); <u>see</u> <u>also</u> <u>Picard v. Flinn Investments, LLC</u>, 463 B.R. 280, 283-84 (S.D.N.Y. 2011); <u>In re Gaston & Snow</u>, 173 B.R. 302, 305-06 (S.D.N.Y. 1994).  Withdrawal is mandatory where a bankruptcy court must engage in "significant interpretation" of non-bankruptcy federal laws, regardless of a "bankruptcy court's familiarity with a statute outside of Title 11." <u>Picard v. JPMorgan Chase & Co.</u>, 454 B.R. 307, 316 (S.D.N.Y. 2011).  Furthermore, "the burden of establishing a right to mandatory withdrawal is more easily met" where matters of "first impression are concerned." <u>Id.</u> at 312; <u>In re Oil Co., Inc.</u>, 140 B.R. 30, 35 (E.D.N.Y. 1992) (mandatory withdrawal appropriate due to the complexity of the issues raised under non-bankruptcy federal laws and the fact that the issues "appear to be ones of first impression."); <u>Bear, Stearns Secs. Corp. v. Gredd</u>, No. 01-CV-4379, 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001); <u>Mishkin v. Ageloff</u>, 220 B.R. 784, 796 (S.D.N.Y. 1998).

## II. <u>Mandatory Withdrawal</u>

Defendants argue that withdrawal is mandatory under Section 157(d) because the Bankruptcy Court will be required to "review, consider and make substantial and significant findings on whether Plaintiffs' constitutional rights were deprived and whether Plaintiffs have established their claims in accordance

with applicable case law" interpreting the Section 1983 Claims.[13]

(Defs. Br. at 14-15.)   Plaintiffs respond that withdrawal is unnecessary because the Adversary Proceeding involves the "straightforward application of a federal statute to the particular set of facts asserted by Plaintiffs in their Section 1983 claims."  (Pls. Opp. at 11-12.)

The Court finds mandatory withdrawal inappropriate because resolution of Plaintiffs' claims requires the simple "'application of a federal statute to a particular set of facts.'" In re Extended Stay, 466 B.R. 188, 196 (S.D.N.Y. 2011) (quoting Mishkin, 270 B.R. at 564); In re Ionosphere Clubs, Inc., 103 B.R. 416, 420 (S.D.N.Y. 1989) ("While any application of a statute to a factual situation necessitates a degree of statutory interpretation, as is the case here, Congress could not have intended to provide mandatory withdrawal in cases that merely involve a routine application of established legal standards.").

---

[13] With respect to Plaintiffs' state law claims, Defendants argue that mandatory withdrawal is required because "these claims do not involve any bankruptcy laws or policy considerations and are based solely on New York law." (Defs. Br. at 17.)  However, the fact that there are no claims under the Bankruptcy Code is not dispositive.  See Gisinger v. Patriach, No. 16-CV-1564, 2016 WL 6083981, at *4 (S.D.N.Y. Oct. 18, 2016) (mandatory withdrawal inappropriate where the "proceeding does not include any claims under the Bankruptcy Code" and the non-bankruptcy federal claims "are not particularly complex and will require only simple application of the [non-bankruptcy federal law] by the Bankruptcy Court.")

Defendants do not argue that the issues before the Bankruptcy Court require interpretation of an unsettled area of non-bankruptcy federal law.[14] Defendants similarly do not articulate "substantial and material" considerations that the Bankruptcy Court must determine with regard to Plaintiffs' Section 1983 Claims. n re Enron Corp., No. 05-CV-4079, 2005 WL 1185804, at *2 (S.D.N.Y. May 17, 2005); In re Extended Stay, 466 B.R. at 203 (quoting In re Ionosphere Clubs, 922 F.2d at 995); In re Johns-Manville Corp., 63 B.R. 600, 602 (S.D.N.Y. 1986) ("It is issues requiring significant interpretation of federal laws that Congress would have intended

---

[14] In reply, Defendants selectively quote "several recent Second Circuit decisions that note [ ] uncertainty" surrounding Plaintiffs' equal protection claims. (Defs. Reply, D.E. 8, at 2 (quoting Lamothe v. Town of Oyster Bay, No. 08-CV-2078, 2012 WL 6720781, *7 (E.D.N.Y. Dec. 27, 2017) (analyzing equal protection claims on selective enforcement and class of one theories))). Defendants arguments fail because they do not, and have not, argued that the Bankruptcy Court will be required to address any of the issues Defendants cite. Moreover, the Second Circuit in Hu v. City of N.Y., 927 F.3d 82, 90-91 (2d Cir. 2019) clarified that the "lower similarity standard applies to the plaintiffs'" LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980) claims rendering Defendants' reliance on Gray v. Maquat, 669 F. App'x 4, 5 n.1 (2d Cir. 2016) moot. (See Defs. Reply at 2.) Further, Defendants' citation to Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 141 (2d Cir. 2010) falls flat because Defendants do not argue that Engquist v. Oregon Department of Agriculture, 553 U.S. 591 128 S. Ct 2146, 170 L. Ed. 2d 975 (2008) bars Plaintiffs' class of one theory of liability. (Defs. Reply at 2.) Nonetheless, the Second Circuit held that "Engquist does not bar all class-of-one claims involving discretionary state action," where, as here, Plaintiffs are not government employees and Defendants were exercising their regulatory power. Analytical Diagnostic, 626 F.3d at 142; Hu, 927 F.3d at 100 n.5.

to have decided by a district judge rather than a bankruptcy judge.") (emphasis in original); <u>In re Adelphi Inst., Inc.</u>, 112 B.R. 534, 537 (S.D.N.Y. 1990) (collecting cases) ("On the occasions when this court grants motions for mandatory withdrawal, it has done so when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws."); <u>In re Chadborne Indus., Ltd.</u>, 100 B.R. 663, 667 (S.D.N.Y. 1989) (same). Therefore, mandatory withdrawal is unnecessary.

Defendants further argue that resolution of Plaintiffs' Section 1983 Claims will require the Bankruptcy Court to analyze "distinct and inherently complex issues of federal law." (Defs. Reply at 10.) In support, Defendants list the elements a party must prove to prevail on each of those claims. (Defs. Br. at 15-17 (outlining the elements of Plaintiffs' due process and equal protection claims); <u>see</u> <u>also</u> Defs. Br. at 15 (stating that the Bankruptcy Court will be required to determine whether Plaintiffs established their claims "<u>in accordance with applicable case law interpreting 42 U.S.C. § 1983 cases</u>.") (emphasis added).) Defendants' recitation of the elements underscores that there are several decisions already interpreting Plaintiffs' Section 1983 Claims. <u>See</u> <u>In re Enron Corp.</u>, 2005 WL 1185804, at *2. Thus, the Court finds that the Bankruptcy Court will not engage "in the intricacies [and interpretation] of" a federal law because the Bankruptcy Court need only apply those elements, as outlined by

Defendants, to the facts.  In re Ionsphere Clubs, 922 F.2d at 995;

In re Enron Corp., 2005 WL 1185804, at *2 (mandatory withdrawal

inappropriate where movant did not "articulate[ ] what is

substantial and material with regard to the Bankruptcy Court's

consideration of the parties'" non-bankruptcy federal claim)

(emphasis in original).

The Court is not persuaded by Defendants' citation to

LightSquared Inc. v. Deere & Co., No. 13-CV-8157, 2014 WL 345270

(S.D.N.Y. Jan. 31, 2014).  (Defs. Br. at 14.)  In LightSquared,

mandatory withdrawal was appropriate because the issue before the

bankruptcy court was a matter of first impression, undecided by

the Second Circuit, and involved "significant" interpretation and

application of non-bankruptcy federal law.  Id., at *4.  As stated

above, Defendants do not argue the existence of "novel or seldom

litigated legal issue[s]" or significant interpretation of

42 U.S.C. § 1983 beyond the Bankruptcy Court's application of

established "case law interpreting 42 U.S.C. § 1983" to the facts

that justify mandatory withdrawal.  Guevoura Fund Ltd. v.

Sillerman, No. 18-CV-9784, 2018 WL 6713124, at *4 (S.D.N.Y. Dec. 3,

2018); (see also Defs. Br. at 15).[15]

---

[15] Defendants also cite Bonny Gas Transport Ltd. v. O.W. Bunker,
No. 14-CV-9452, 2016 WL 5369615, at *2-3 (S.D.N.Y. Apr. 16,
2016) and In re Bulk Oil (USA), Inc., 209 B.R. 29 (S.D.N.Y.
1997).  (Defs. Reply at 10.)  Unlike Bonny Gas, here, there are
no unsettled principles of non-bankruptcy federal law before the
Bankruptcy Court.  See Bonny Gas, 2016 WL 5399615, at *2

The Court also declines to adopt the reasoning of the two out-of-Circuit cases cited by Defendants, In re Walton, 158 B.R. 939, 941-43 (Bankr. N.D. Ohio 1993) and In re Baker, 86 B.R. 234, 238 (D. Colo. 1988). (Defs. Br. at 15; Defs. Reply at 2, 10.) The Walton and Baker courts both construed the mandatory withdrawal provision and its legislative history as requiring withdrawal any time civil rights laws are implicated. Baker, 86 B.R. at 238-39 (quoting the House debate on the final version of Section 157(d) and finding that the "legislative history behind § 157(d) clearly supports" mandatory withdrawal in civil rights action); Walton, 158 B.R. at 942 (finding civil rights action subject to mandatory withdrawal by analyzing the House debate and legislative history of Section 157(d)).[16]

_____

(mandatory withdrawal appropriate because "interesting and apparently novel questions regarding the interplay among the United States bankruptcy law, maritime law and the federal interpleader statutes.") (internal quotation marks and citation omitted; emphasis added). Moreover, there are no similarities between the non-bankruptcy federal statute at issue in In re Bulk Oil and the Section 1983 Claims. Nonetheless, unlike in In re Bulk Oil, other than generally arguing that the Bankruptcy Court must "consider and make substantial and significant findings" on the Section 1983 Claims, Defendants do not raise any specific arguments that indicate the Bankruptcy Court will engage in significant interpretation of the Section 1983 Claims. (Defs. Br. at 15.)

[16] There is no concern, as there was in Walton, regarding the parties' right to a jury trial because no party here has requested a jury trial. See Walton, 158 B.R. at 942-43.

As discussed above, however, courts in this Circuit construe the mandatory withdrawal provision narrowly and "have not accorded" Section 157(d)'s legislative history as much "weight . . . . Instead, [courts in this Circuit] have [ ] decided whether withdrawal of the reference is required by determining the significance of the non-Code issue to the resolution of the question presented." In re Chadborne Indus., Ltd., 100 B.R. 663, 666-67 (S.D.N.Y. 1989) (citing In re White Motor Corp., 42 B.R. 693 (N.D. Ohio 1984)).  For the reasons stated, the Bankruptcy Court need not engage in "significant" interpretation of non-bankruptcy federal laws.  Accordingly, mandatory withdrawal is inappropriate.

A. Timeliness

Regardless of whether withdrawal is discretionary or mandatory, 28 U.S.C. § 157(d) sets forth a threshold determination of timeliness.  See Connolly v. Bidermann Indus. U.S.A., Inc., No. 95-CV-1791, 1996 WL 325575, at *3 (S.D.N.Y. June 13, 1996); see 28 U.S.C. § 157(d) ("The district court shall, on timely motion of a party, so withdraw a proceeding . . . .") (emphasis added). Although "timely" is not defined, "courts in this Circuit have defined 'timely' to mean 'as soon as possible after the moving party has notice of the grounds for withdrawing the reference.'" In re FMI Forwarding Co., No. 00-BK-41815, 2005 WL 147298, at *6

(S.D.N.Y. Jan. 24, 2005) (quoting <u>In re Kentile Floors, Inc.</u>, 95-CV-2470, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995)).

Thus, withdrawal is also inappropriate because Defendants failed to meet the threshold requirement of timeliness. Plaintiffs filed their Complaint on February 11, 2016, asserting violations of both state law and 42 U.S.C. § 1983. (Compl., DiConza Decl., Ex. 1, D.E. 1-3, at ECF pp. 48-65.) On March 11, 2016, Defendants removed the action to the Bankruptcy Court. (<u>See</u> Notice of Removal.) At a minimum, Defendants had notice of their grounds for withdrawal prior to removal because there is no question that Defendants knew the Adversary Proceeding involved claims brought under state law and Section 1983. (<u>See</u> Compl.) Defendants' nine month delay after removing this action renders the Motion untimely. <u>Connolly</u>, 1996 WL 325575, at *3 (finding untimely a motion to withdraw reference filed after a delay of eight months); <u>Calvagno v. Bisbal</u>, No. 06-CV-2020, 2007 WL 9710386, at *9 (E.D.N.Y. Jan. 29, 2007) (finding motion to withdraw the reference untimely where movants filed motions and various pleadings for eight months prior to requesting withdrawal); <u>Drew v. WorldCom, Inc.</u>, No. 06-CV-3407, 2006 WL 2129309, at *3 (S.D.N.Y. July 26 2019) (motion to withdraw the reference untimely after eight months); <u>In re FMI Forwarding Co.</u>, No. 00-BK-41815, 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005) (motion to withdraw

reference untimely when made eighteen months after movant became aware of grounds for removal).

Further, Courts in this Circuit often deny motions to withdraw reference as untimely where there is some indication of forum-shopping. See Lone Star Indus., Inc. v. Rankin Cty. Econ. Dev. Dist. (In re N.Y. Trap Rock Corp.), 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying motion to withdraw reference as untimely after a "short" period of three months where the circumstances strongly indicated forum shopping); Drew, 2006 WL 2129309, at *3 (denying the plaintiff's motion to withdraw as untimely when filed "only three weeks after [the defendant] moved in the Bankruptcy Court for summary judgment and for an order denying class certification"); In re FMI Forwarding Co., 2005 WL 147298, at *7 (S.D.N.Y. Jan. 24, 2005) (denying motion as untimely where "the only reason the Court can surmise for [defendant] filing its withdrawal motion when it did was to stay the Bankruptcy Court's ruling on [p]laintiff's severance motion and instead require this [c]ourt to rule on essentially the same question").

The timing of Defendants' Motion "gives rise to a strong inference that [they] are attempting to forum shop." Drew, 2006 WL 2129309, at *3. Indeed, the circumstances here indicate forum shopping: Defendants filed this Motion after affirmatively removing the matter to the Bankruptcy Court, entering into a So-Ordered Stipulation consenting to removal to the Bankruptcy Court,

20

and only one month after the Bankruptcy Court issued an adverse ruling on their motion to dismiss. Id.; In re N.Y. Trap Rock, 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying motion to withdraw the reference in part on timeliness grounds where the motion was made shortly after the bankruptcy court issued an adverse ruling and noting that "[f]orum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success").

Moreover, Defendants' arguments that the Bankruptcy Court lacks subject matter jurisdiction and that they do not consent to final orders or judgments by the Bankruptcy Court, raised for the first time after Defendants substituted counsel and after receiving an adverse ruling on their motion to dismiss, "provides further support for the inference that the motion to withdraw the reference is motivated by a desire to obtain what [Defendants] hope[ ] will be a more favorable forum for litigation . . . ." Drew, 2006 WL 2129309, at *3 (motion to withdraw denied where the movant asserted conflicting representations in its withdrawal motion with prior statements that the "Bankruptcy Court had jurisdiction over the" matter and that the claim was a "core proceeding").

Accordingly, Defendants' Motion fails to "meet the threshold requirement" that such a motion be timely. Connolly, 1996 WL 325575, at *3.

III. <u>Subject Matter Jurisdiction</u>

Defendants also argue that withdrawal is appropriate because the "Bankruptcy Court lacks subject matter jurisdiction over the Adversary Proceeding and automatic referral to the Bankruptcy Court was improper."[17] (Defs. Br. at 9; Defs. Reply, at 4-9.) According to Defendants, Plaintiffs' claims do not "arise under" the Bankruptcy Code and do not "arise in" or "relate to" the Debtors' Bankruptcy cases. (Defs. Br. at 9-11.) Plaintiffs respond that their claims "arise in" a case under title 11 because "Plaintiffs' damages were incurred" as a result of BFCU's obligation as the second highest bidder to close on the Property. (Pls. Opp. at 13.)

---

[17] According to Defendants, Plaintiffs' argument that Defendants consent to the Bankruptcy Court's jurisdiction is "at odds" with the facts. (Defs. Reply at 2-3.) While Defendants are correct that they cannot consent to subject matter jurisdiction, there is nothing manufactured about the fact that Defendants represented: (1) the Adversary Proceeding is "<u>related to the Debtors' chapter 7 cases</u>" and the "<u>Bankruptcy Court has jurisdiction</u>" over the Adversary Proceeding, (2) the Adversary Proceeding is a "core" proceeding, and (3) if the Adversary Proceeding is determined to be "non-core," Defendants consent to final orders or judgments by the Bankruptcy Court. (Notice of Removal ¶ 3 (emphasis added).) Defendants further argue that subject matter jurisdiction is lacking because the Trustee and Plaintiffs are "no longer" asserting "identical claims," yet the facts underlying Defendants' basis for removal have not changed: the parties' have been, and remain, non-debtors litigating non-bankruptcy federal law. (Defs. Reply at 3.) Defendants fail to reconcile or otherwise explain these obvious contradictions. In any event, the Court declines to rule on this issue at this time.

The Court need not decide the issue of subject matter jurisdiction on Defendants' Motion to withdraw the reference.  See In re Formica Corp., 305 B.R. 147, 151 (S.D.N.Y. 2004).  "Because the Court has denied the motion to withdraw the reference, the bankruptcy court should decide in the first instance any motion to dismiss for lack of subject matter jurisdiction."  Id. at 151 (denying motion to withdraw reference to the bankruptcy court and directing the parties to file a motion to dismiss for lack of jurisdiction with the bankruptcy court "in the first instance."); In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996) (district court could not decide factual issues without withdrawing the reference); In re Enron Power Mktg., Inc., No. 01-CV-7964, 2003 WL 68036, at *11 (S.D.N.Y. Jan. 8, 2003) (denying motion to withdraw the reference to the bankruptcy court and declining to exercise jurisdiction over factual issues).

CONCLUSION

For the foregoing reasons, Defendants' Motion to withdraw the reference to the Bankruptcy Court is DENIED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     November   25  , 2019
           Central Islip, New York

23